UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

SHARNEE APPLETON,

Plaintiff,

v.

CENTURION HEALTH SERVICES,
BEDWELL,
L. WOLF,
SAM BYRD,
EMIMY,
RIGGS,
MATSON,
CUPP,
FIRESTONE,

Defendants.

No. 2:22-cv-00434-JPH-MKK

**Order Screening Complaint, Dismissing Insufficient Claims, and Directing Further Proceedings**

Plaintiff Sharnee Appleton is currently incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He brings this suit under § 1983 alleging that the defendants were deliberately indifferent to his serious medical needs. Because Mr. Appleton is a "prisoner," this Court has an obligation to screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Appleton names nine defendants in his complaint: (1) Centurion Health Services ("Centurion"), the contractor who provides medical-care services for the Indiana Department of Correction at Wabash Valley; (2) Health Service Administrator ("HSA") Bedwell; (3) Nurse L. Wolf; (4) Dr. Sam Byrd; (5) Nurse Emmy; (6) Nurse Riggs; (7) Dr. Matson; (8) Nurse L. Cupp; and (9) Nurse Firestone. He sues all individual defendants in both their individual and official capacities. He seeks compensatory damages, punitive damages, and injunctive relief. He bases his complaint on the following allegations:[1]

Mr. Appleton broke his ankle in February 2021. Dr. Matson—a physician at Terre Haute Regional Medical Center—performed surgery on Mr. Appleton.

Centurion became the contracted medical provider at Wabash Valley on July 1, 2021.

Dr. Matson performed a second surgery on Mr. Appleton on February 2, 2022. Mr. Appleton was supposed to see Dr. Matson again in two weeks because of an infection in his ankle. Mr. Appleton made multiple verbal requests for medical care at Wabash Valley because his foot was swollen, painful, infected, and draining pus. He explained that he was supposed to have a follow-up appointment with Dr. Matson around February 16.

---

[1] Mr. Appleton's complaint includes a nearly day-by-day account of events over the course of several months. The Court summarizes the relevant allegations here.

Mr. Appleton's condition had not improved by March 31, 2022, so he filed a request for health care form. Nurse Heather replied that he was scheduled for hardware removal and did not refer Mr. Appleton's request to a provider or schedule him to see a doctor.

Mr. Appleton saw Dr. Matson again on April 11, 2022 and was prescribed antibiotics and pain medication. About two weeks later, Mr. Appleton submitted another request for health care form because his toes were severely swollen and numb. Mr. Appleton saw Nurse Taylor Hill on April 28, 2022, and told her that he had rods, pins, and bone fragments in his foot, his foot was swollen, his pain level was 10 out of 10, and he had pus coming out of his surgical wound.

Mr. Appleton saw Dr. Matson again on May 4, 2022. Dr. Matson removed his cast, took the staples out of his wound, and ordered that he return on May 25 for an MRI or CT scan. He also ordered that Mr. Appleton's wound dressing be changed each day and prescribed medication that was to begin on May 5.

When Mr. Appleton returned to Wabash Valley on May 4, he filled out a health care request form, stating that his foot was swollen and infected, he was in pain, he could not change his dressing, and he needed help and supplies. Nurse Riggs delayed helping Mr. Appleton and waited until May 11 before she even tried to address his issues.

On May 9 and 10, Mr. Appleton had blood and pus leaking from his wound, but Centurion nurses did not provide daily dressing changes. Mr. Appleton saw Nurse Riggs and Nurse Wolf on May 11. He told them that his pain was 10 out of 10 and that he needed his medication. They did not try to refer him to see a doctor and took no steps to have his prescription filled.

Mr. Appleton finally received a single Tramadol pill on May 13—eight days after he should have received the medication. Nurse Firestone was responsible for the delay and took no measures to have the prescription filled.

On May 14 and 17, Mr. Appleton saw Nurse Riggs and Nurse Wolf, complaining that his pain level was 10 out of 10, his foot was swollen and infected, and he was not receiving his antibiotics or pain medication. They refused to give him his medication and took no steps to refer help him.

Mr. Appleton saw Dr. Byrd on May 17. Dr. Byrd put Mr. Appleton on the list for an MRI or CT Scan and ordered antibiotics from CVS Pharmacy. He also ordered that Mr. Appleton receive daily dressing changes. Mr. Appleton received antibiotics the next day.

From May 20 to 22, 2022, Nurse Wolf and Nurse Cupp refused to change his wound dressing, even though he had blood and pus leaking from his wounds and Dr. Byrd had ordered daily dressing changes.

On May 22, 2022, HSA Bedwell told Mr. Appleton that Centurion does not choose follow-up dates with outside physicians; instead, the hospital does. Mr. Appleton alleges that she was trying to shift the responsibility for delayed medical care to Dr. Matson and Terre Haute Regional Medical Center.

From May 30 to June 7, 2022, Mr. Appleton requested daily dressing changes because his wound was leaking pus and blood, but Centurion nurses refused to change his dressings. As a result, Mr. Appleton filed a health care request form on June 7. Mr. Appleton's requests for daily dressing changes were again refused on June 10, 11, and 12, 2022. Over the next several days, Mr. Appleton became increasingly ill. He was sent to the hospital on June 20 and remained there until June 24 because of severe pain and infection in his surgical wound.

He returned to Wabash Valley and remained in the infirmary on IV sodium chloride until July 8, when Nurse Emmy broke the IV pick line off in his arm. He asked to see a doctor, but Nurse Mary and Nurse M. Mily made no effort to contact the doctor or remove the pick line.

Mr. Appleton saw Dr. Byrd on July 11. On July 13, Mr. Appleton told Nurse Wolf he was in pain and had blood and pus leaking from his surgical wound. He asked for pain medication. She refused to give him his medication or schedule him to see a doctor. Mr. Appleton saw Dr. Matson again on July 18 and was diagnosed with a severe infection. Nurses refused to change Mr. Appleton's dressings again on July 21.

On August 5, Mr. Appleton was told that he had tested positive for MRSA.[2] The next day, he was told that he would get another pick line in his arm. Dr. Byrd sent an email to Dr. Matson about the broken pick line lodged in Mr. Appleton's arm—28 days after Nurse Emmy broke the pick line. Mr. Appleton also had another line placed. From August 7 to 13, 2022, Mr. Appleton received medications for his MRSA infections. On August 13, Nurse Wolf roughly jammed the IV into Mr. Appleton's hand when she was giving him medication. On August 13 and 14, the night nurse gave Mr. Appleton medication. It caused his skin to burn.

In April, May, and June 2022, Mr. Appleton notified HSA Bedwell about his medical problems, the denial of medications, and the delay in receiving medical care by filing grievances. HAS Bedwell failed to address any of his issues. Mr. Appleton alleges that HSA Bedwell was a final decisionmaker for Centurion. He also alleges that he experienced a continuing, systematic practice of deprivation of medical care and excessive delays in receiving treatment and medication.

Mr. Appleton states that he is pursuing claims under the Eighth Amendment.

## III. Discussion of Claims

Mr. Appleton states that he is suing under the Eighth Amendment to the U.S. Constitution. Where a *pro se* litigant has expressly stated the legal theory he wishes to pursue, the district court

---

[2] Mr. Appleton states that he tested positive for "Mercer," but the Court understands this to be a reference to MRSA—methicillin-resistant Staphylococcus aureus. *See* https://www.cdc.gov/mrsa/index.html (last visited April 4, 2023).

is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Accordingly, the Court addresses the plausibility of Mr. Appleton's claims under the Eighth Amendment and no other theories.

Applying the screening standard to the factual allegations in the complaint certain claims are dismissed while other claims shall proceed as submitted.

First, Mr. Appleton's claims against Dr. Matson are **dismissed**. Dr. Matson is identified as a physician at Terre Haute Regional Medical Center—not an employee of or contractor with the Indiana Department of Correction or Centurion. *See Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 797–98 (7th Cir. 2014) (outside doctors who accepted referrals to treat inmates from contractor that provided medical services to state department of correction were not state actors because their relationship with the contractor was too attenuated to support the conclusion that they were acting under color of state law). As such, Mr. Appleton has not alleged any facts plausibly suggesting that he is a state actor who can be liable under the Eighth Amendment. Regardless, Mr. Appleton's complaint includes no factual allegations plausibly suggesting that Dr. Matson engaged in any wrongdoing.

Second, Mr. Appleton's Eighth Amendment claims that HSA Bedwell, Nurse Wolf, Dr. Byrd, Nurse Emmy, Nurse Riggs, Nurse Cupp, and Nurse Firestone were deliberately indifferent to his serious medical needs **shall proceed**. *See Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)) ("Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively

serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'").

Finally, Mr. Appleton alleges that Centurion was deliberately indifferent to his serious medical needs. Because Centurion acts under color of state law by contracting to perform a government function—providing medical care to correctional facilities—it is treated the same as a municipality for purposes of § 1983 claims. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Therefore, to state a cognizable deliberate indifference claim against Centurion, Mr. Appleton must allege that he suffered a constitutional deprivation as the result of a Centurion policy or custom. *Id*. At this stage of the proceedings, and construing Mr. Appleton's complaint liberally, he has adequately alleged that his injuries were traceable to Centurion policies or customs. Accordingly, his Eighth Amendment claims against Centurion **shall proceed**.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If Mr. Appleton believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through May 3, 2023,** in which to identify those claims.

The **clerk is directed** to terminate Dr. Matson as defendants on the docket.

## IV. Service of Process

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to defendants Centurion, Bedwell, L. Wolf, Sam Byrd, Emmy, Riggs, Cupp, and Firestone in the manner specified by Rule 4(d). Process shall consist of complaint, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Centurion and its employees electronically.

Defendants Bedwell, Wolf, Byrd, Emmy, Riggs, Cupp, and Firestone are identified as employees of Centurion. Centurion is **ORDERED** to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information may be provided to the Court informally or may be filed *ex parte*.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 4/10/2023

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

SHARNEE APPLETON
986105
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Electronic service to Centurion
Bedwell
L. Wolf
Sam Byrd
Emmy
Riggs
L. Cupp
Firestone